FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHELLE DALE S.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 1:18-CV-03199-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

    Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 13, 15**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-7, 141-166. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

## I. Jurisdiction

Plaintiff filed her application for Disability Insurance Benefits on October 16, 2013. *See* AR 144, 522-23. She alleged disability beginning on August 23, 2013. AR 522. Plaintiff's application was initially denied on January 7, 2014, *see* AR 411-13, and on reconsideration on August 7, 2014. *See* AR 417-18. On September 16, 2014, Plaintiff filed a request for a hearing. AR 422-23.

After a continuance request by Plaintiff, a hearing with Administrative Law Judge ("ALJ") Laura Valente eventually occurred on March 23, 2017. AR 349-387. On August 29, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits. AR 141-166. On August 13, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-7, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On October 11, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. § 404.1572. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. § 404.1508-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is

denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

## III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 44 years old on the alleged date of onset, which the regulations define as a younger person. AR 156, 389; *see* 20 C.F.R. § 404.1563(c). She graduated from high school, completed a physical therapy aide program, and can read, write, and communicate in English. AR 545,

547, 1404. She has past relevant work as an insurance claims adjuster, an office manager, a payroll clerk, and an inventory clerk. AR 156, 372-74, 535-39.

## V. The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from August 23, 2013 (the alleged onset date) through August 29, 2017 (the date the ALJ issued her decision). AR 144, 158.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (citing 20 C.F.R. § 404.1571 *et seq*.). AR 146.

**At step two**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, plantar fasciitis, asthma, and posttraumatic stress disorder (citing 20 C.F.R. § 404.1520(c)). AR 146.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 149.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), albeit with some additional limitations. AR 151. With respect to Plaintiff's physical abilities, the ALJ found that Plaintiff could sit for one hour at a time, and then would need to change position, for a total of six hours in an eight-hour workday. AR 151. She

could stand or walk for a total of three hours in an eight-hour workday. AR 151.

She could lift and carry 10 pounds frequently and 20 pounds occasionally,

occasionally reach overhead bilaterally, and occasionally perform all other postural

movements. AR 151. She could occasionally push or pull with her lower left

extremity to operate foot pedals. AR 151. She could never climb ladders, ropes, or

scaffolds or be exposed to pulmonary irritants, extreme cold, heights, or dangerous

moving machinery. AR 151.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff had

sufficient concentration to understand, remember, and carry out simple, repetitive

tasks in two-hour increments with usual breaks throughout an eight-hour workday.

AR 151. Given these physical and psychological limitations, the ALJ found that

Plaintiff was unable to perform any past relevant work. AR 156.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work

experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that she could perform (citing 20

C.F.R. § 404.1569). AR 157. These included a touch-up screener and table worker.

AR 157.

## VI.    Issues for Review

Plaintiff argues that: (1) the Appeals Council improperly rejected the new

medical evidence she submitted with her request for review, (2) the ALJ erred by

not including Guillain-Barré syndrome, mixed connective tissue disease, essential

tremors, and migraines as severe impairments at step two of the sequential

evaluation process, (3) the ALJ improperly discounted Dr. Rox Burkett's opinion,

(4) substantial evidence does not support the ALJ's step five finding that other jobs

existed in significant numbers in the national economy that she could perform, and

(5) the ALJ improperly discredited her subjective pain complaint testimony. ECF

No. 13 at 4-21.

## VII. Discussion

### A. The Appeals Council Properly Rejected the New Medical Evidence Plaintiff Submitted with her Request for Review

Plaintiff argues that the Appeals Council erroneously rejected the new

evidence she submitted with her request for review. ECF No. 13 at 4-5. She

specifies three sets of records in particular: (1) an April 2014 cerebrospinal fluid

analysis, *see* AR 234-35, (2) three lumbar imaging studies and Dr. Dave

Atteberry's July 2017 chart note, *see* AR 22, 31-32, 169, 176, and (3) her

November 2017 lumbar fusion operative report, *see* AR 16-17. ECF No. 13 at 5.

The Social Security regulations permit a claimant to submit additional

evidence to the Appeals Council. 20 C.F.R. § 404.900(b). The Appeals Council is

required to consider new and material evidence if it "relates to the period on or

before the date of the [ALJ's] hearing decision" and "there is a reasonable

probability that the additional evidence would change the outcome of the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

decision." 20 C.F.R. § 404.970(a)(5). Evidence that meets the criteria is to be considered by the Appeals Council and incorporated into the administrative record as evidence, "which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). Pursuant to agency policy, a copy of evidence not meeting the criteria and therefore not considered by the Appeals Council is nonetheless included as part of the certified administrative record filed with this Court, although by law, the rejected evidence falls outside the scope of the Court's substantial evidence review. *See* Soc. Sec. Admin. Hrgs., Appeals, & Litig. Law Man. ("HALLEX"), HALLEX § I-3-5-20 (addressing how additional evidence is to be handled).

Plaintiff first challenges the Appeals Council's finding that the April 2014 cerebrospinal fluid analysis would not have changed the case's outcome. ECF No. 13 at 5; *see* AR 234-35. Plaintiff argues that this report would have changed the case's outcome because it revealed "elevated GD1a and Gd1b antibodies," which are associated with Guillain-Barré syndrome—a condition the ALJ found that Plaintiff did not have. ECF No. 13 at 5. Plaintiff implies that if the ALJ had the benefit of this report, she would have concluded otherwise. *Id.*

The problem with this argument is that multiple treating doctors reviewed this same cerebrospinal fluid analysis yet nevertheless concluded that Plaintiff did

not suffer from Guillain-Barré syndrome. Treating physician Martin Backer, M.D., reviewed the report and noted that it only revealed "minimal elevation in the GD1a and GD1b ganglioside antibodies . . . only slightly above the upper limits of normal." AR 897-98. He then stated, "I do not think she has Guillain-Barré syndrome." AR 899. Another treating doctor, Marty Brueggemann, M.D., also reviewed the cerebrospinal fluid analysis and noted that it demonstrated only "minor abnormalities." AR 894. He then opined that Plaintiff's examination was "inconsistent with" Guillain-Barré syndrome. AR 894. Finally, treating physician Raffaella Betza, M.D.—who also reviewed the analysis—noted that Plaintiff's test for Guillain-Barré syndrome was negative.[1] AR 940-41.

Relying on these opinions, the ALJ found that Plaintiff did not have Guillain-Barré syndrome. AR 148. Given that all these treating physicians had reviewed and considered the April 2014 cerebrospinal fluid analysis in rendering their opinions, the fact that the ALJ did not have the actual report itself did not change the case's outcome. The Appeals Council did not err in so concluding.

---

[1] In her reply, Plaintiff asserts that the presence of the antibodies in her cerebrospinal fluid "confirmed Guillain-Barré Syndrome." ECF No. 16 at 2. As Dr. Backer explained, this is incorrect. Plaintiff also asserts that Hoan Tran, M.D., "found she had GBS or Miller-Fisher (a variant of GBS)." ECF No. 16 at 2 (citing AR 909). However, Dr. Tran never diagnosed Plaintiff with either of these conditions—he only noted that the "slight[] elevat[ion]" of the antibodies was "associated" with GBS and Miller-Fisher and because of this, he referred Plaintiff for a neurology consultation. *See* AR 909.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

Next, Plaintiff contests the Appeals Council's finding that three lumbar imaging studies and Dr. Atteberry's July 2017 chart note would not have changed the case's outcome. ECF No. 13 at 5; *see* AR 22, 31-32, 169, 176. She argues that these records revealed "abutment on the L5 nerve root . . . junctional stenosis at L4-5 . . . [and] an antalgic gait, diminished L5 and L4 sensation, and absent reflexes." ECF No. 13 at 5. However, Plaintiff fails to explain or point to a medical opinion that explains how these findings functionally limited her in ways that the ALJ had not already accounted for. *See* AR 152-53. But even assuming they did, it still would not have changed the case's outcome because these findings related to Plaintiff's junctional stenosis, which did not meet the 12-month durational requirement for a finding of disability. *See Janell S. v. Comm'r of Soc. Sec.*, No. 1:18-CV-03167-MKD, 2019 WL 6121409, at *6 (E.D. Wash. 2019); 20 C.F.R § 404.1505(a). Dr. Atteberry suspected junctional stenosis in July 2017, confirmed it in September 2017, performed a lumbar fusion in November 2017, and the condition had largely resolved by January 2018. *See* AR 13-18, 31-33. Because Plaintiff fails to meet her burden to demonstrate that this impairment lasted for at least 12 months, she cannot show that the additional evidence would have affected the ALJ's decision. *See Janell S.*, 2019 WL 6121409, at *6 (holding that evidence submitted to Appeals Council relating to claimant's ankle surgery, which occurred

after the ALJ's decision, did not affect case's outcome because the ankle condition resolved nine months after its onset).

Finally, Plaintiff challenges the Appeals Council's rejection of the operative report from her November 2017 lumbar fusion. ECF No. 13 at 5. Plaintiff submitted her lumbar surgery records to the Appeals Council twice. First, she submitted the entire surgical file from Sunnyside Community Hospital, which included her July 2017 appointment note (where Dr. Atteberry suspected stenosis), her imaging reports, her September 2017 follow-up, her operative report and post-operative notes, her evaluation notes, her anesthesia and nursing notes, her discharge reports, and her physical therapy plan of care. *See* AR 20-140. The Appeals Council examined these records and rejected them on the basis that they did not show a reasonable probability of changing the case's outcome. AR 2. Plaintiff later submitted a subset of these same surgical records, which only included the operative report and her appointment notes. *See* AR 13-18. The Appeals Council rejected these on the basis that they did not relate to the period at issue. AR 2.

Given that Dr. Atteberry suspected junctional stenosis in July 2017, *see* AR 31-33—which was a month before the ALJ issued her decision—Plaintiff is correct that the Appeals Council erred by rejecting the operative report on the basis that it did not relate to the period at issue. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659

F.3d 1228, 1232-33 (9th Cir. 2011) (finding new evidence relates to the period at issue when it concerns the same ongoing impairments present before the ALJ's decision); *Janell S.*, 2019 WL 6121409, at *5-6 (holding that claimant's records for ankle surgery, which occurred after the ALJ's decision, were nevertheless related to period at issue because the ankle impairment was identified prior to the ALJ's decision). However, although Plaintiff's November 2017 operative report does relate to the period at issue, the Appeals Council nevertheless properly concluded that it did not affect the case's outcome. As discussed above, Plaintiff's stenosis largely resolved by January 2018 and therefore did not meet the 12-month durational requirement for a finding of disability. *Janell S.*, 2019 WL 6121409, at *6 (holding the same under nearly identical facts).

**B.     The ALJ did not Reversibly Err in Considering Plaintiff's Impairments at Step Two**

Plaintiff contends the ALJ improperly evaluated numerous impairments at step two of the sequential evaluation process. ECF No. 13 at 5-10. Specifically, she argues that the ALJ erred in either rejecting the following conditions or finding that they were not severe: (1) Guillain-Barré syndrome, (2) mixed connective tissue disease, (3) essential tremors, and (4) headaches/migraines. *Id.*

At step two in the sequential evaluation, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden of establishing that he or

she has a severe impairment. 20 C.F.R. § 404.1512(a). In doing so, the claimant must provide objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient. 20 C.F.R. § 404.1521.

The existence of an impairment does not mean that it is "severe." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Edlund*, 253 F.3d at 1159. When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019). Rather, to establish harmful error, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis. *Id.*

### 1. Guillain-Barré syndrome

Plaintiff first argues that the ALJ erred in finding that she did not have Guillain-Barré syndrome. ECF No. 13 at 6-7. However, as discussed above, Dr. Backer, Dr. Brueggemann, and Dr. Betza all reviewed Plaintiff's April 2014 cerebrospinal fluid analysis[2] yet nevertheless concluded that she did not suffer from Guillain-Barré syndrome. *See* AR 894, 897-99, 940-41. Plaintiff cites records

---

[2] Plaintiff asserts that "[t]here is no indication Dr. Backer saw these lab results." ECF No. 13 at 7. This is incorrect. *See* AR 898 ("I reviewed laboratories that she brings from the outpatient setting from her lumbar puncture and she had . . . elevation in the antibodies as mentioned above, which was only slightly above the upper limits of normal.").

from Dr. Tran, but he only noted that the "slight[] elevat[ion]" of the antibodies was "associated with" Guillain-Barré syndrome and because of this, he referred Plaintiff for a neurology consultation. See AR 909. Plaintiff does not cite a diagnosis from Dr. Tran or any other medical provider. Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff did not have Guillain-Barré syndrome.

### 2.  Mixed connective tissue disease

Plaintiff also contests the ALJ's finding that she "does not have a medically determinable auto-immune disorder."[3] AR 148; ECF No. 13 at 7. She cites medical records from Dr. Richard Neiman, Dr. Lawrence Murphy, Dr. Raffaella Betza, and Dr. Henry Kim. ECF No. 13 at 7 (citing AR 1094, 1133-1157, 1330-31).

In June 2014, Plaintiff saw Dr. Betza (resident) and Dr. Murphy (attending physician) at Swedish Neurology for tremors and because she was concerned about multiple sclerosis. *See* AR 1331. They opined that the likelihood of Plaintiff having multiple sclerosis was "vanishingly small" and noted that somatoform disorder was "quite high on [the] differential." AR 1331. However, they wanted her to "see a rheumatologist to rule out a connective tissue disorder." AR 1331. They then referred her to rheumatologist Dr. Neiman. AR 1097.

---

[3] Plaintiff did not list mixed connective tissue disease in her application but did raise it in her opening statement at the hearing. AR 360, 546.

In September 2014, Dr. Neiman performed a rheumatology evaluation. AR 1097. He ordered laboratory work to look for autoimmune diseases. AR 1098. The testing resulted in "borderline findings" for anti-nuclear antibodies and C-reactive proteins. AR 1095. Based on these results, he opined that there was "a *slight* possibility her problems *may* be autoimmune." AR 1096 (emphasis added). In December 2014, Dr. Neiman re-evaluated Plaintiff and again opined, "It is possible this is autoimmune but it is clearly a tentative diagnosis." AR 1094.

In February 2015, Plaintiff had an appointment with Dr. Kim—who she had been seeing for pain management for several years—and she reported that Dr. Neiman had diagnosed her with rheumatoid arthritis, mixed connective tissue disease, and fibromyalgia. AR 1147 (Dr. Kim's chart note stating: "seeing Dr. Neiman in Seattle; dx with RA and MCTD as well as FMS per pt"), 1149 ("dx of RA, MCTD, and fibromyalgia by rheumatology per pt"). Based on Plaintiff's report, Dr. Kim added mixed connective tissue disease to the list of her conditions. AR 1133, 1136, 1139. Dr. Kim had never previously noted this condition before, nor did he ever subsequently test or treat her for it. *See* AR 1132-1160.

In sum, Dr. Betza and Dr. Murphy did not diagnose Plaintiff with a connective tissue disorder but rather referred her to Dr. Neiman to rule it out. Dr. Neiman only ever found a "possibility" of the disease and Dr. Kim only listed it as a diagnosis based on Plaintiff's self-reports. Accordingly, the ALJ properly found

that Plaintiff did not have a medically determinable autoimmune disorder. *See Belknap v. Astrue*, 364 F. App'x 353, 355 (9th Cir. 2010) (physicians' diagnoses based on claimants' self-reporting—rather than medical signs and laboratory findings—cannot establish medically determinable impairments); 20 C.F.R. § 404.1521 (same); *Stewart v. Colvin*, 2015 WL 3616082, at *10 (N.D. Ala. 2015) (doctor's statement that claimant "could *possibly* have osteoarthritis" was insufficient to establish a medically determinable impairment).

### 3. Essential tremors

Plaintiff challenges the ALJ's characterization of her essential tremors as a symptom of her other conditions rather than as an independent medically determinable impairment. ECF No. 13 at 7-8; *see* AR 148. Multiple medical providers noted Plaintiff's tremors, although no one clearly explained their etiology. *See* AR 940 (Dr. Betza), 943 (Dr. Murphy), 1300, 1306 (ARNP Tweedy), 1339, 1342 (Dr. Anne Mai, characterizing the tremors as "mild"). But even assuming the ALJ erred in analyzing Plaintiff's tremors as a symptom as opposed to an independent impairment, "Plaintiff does not advance a single functional limitation that the ALJ failed to consider in the sequential analysis." *Cindy F.*, 367 F. Supp. 3d at 1207. Other than citing the opinion of Dr. Burkett, which the ALJ properly discounted, *see infra* at 18-24, Plaintiff fails to identify any limitations

stemming from her tremors and therefore fails to demonstrate harmful error. *See* ECF No. 13 at 9, No. 16 at 4-5 (citing AR 1328-29).

### 4. Migraines

Finally, Plaintiff disputes the ALJ's finding that her headaches/migraines, while medically determinable, were not severe because they did not cause any significant functional limitations. ECF No. 13 at 8; *see* AR 147. A number of the records to which Plaintiff cites actually support the ALJ's finding. *See* AR 873 ("She says that the headaches and the frequent migraines that she had been experiencing prior to surgery are reduced both in intensity and frequency."), 1339 ("She has been having recurrence of daily *mild* headaches since the head injury."). And in any event, Plaintiff fails to identify any functional limitations put forth by a medical provider that are not her self-reports.[4] *See* ECF No. 13 at 8, 10, No. 16 at 5 (citing AR 873, 909, 1197-1200, 1220, 1230, 1339-40).

## C. The ALJ Properly Discounted Dr. Burkett's Opinion

Plaintiff argues that the ALJ erred by discounting Dr. Rox Burkett's April 2017 report. ECF No. 13 at 10-16; *see* AR 155, 1327-29.

///

///

---

[4] Plaintiff relies on *Phillips v. Berryhill*, 2017 WL 2664587, at *4 (W.D. Wash. 2017), *see* ECF No. 13 at 9-10, No. 16 at 5, but that case is distinguishable because the ALJ had improperly discounted the claimant's subjective symptom testimony. *Phillips*, 2017 WL 2664587, at *4.

### 1.    Legal principles

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2).

To reject a doctor's opinion, ALJs generally must provide "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2.    Dr. Burkett's report and the ALJ's reasoning

Dr. Burkett reviewed Plaintiff's 893-page medical file at the request of her counsel. AR 1327. He did not examine Plaintiff. AR 1327. In April 2017, he issued

a report outlining his impressions and opinion based on his review of the records. AR 1327. He opined that Plaintiff's lumbar problems, sacroiliac arthritis, leg pain, and knee problems prevented her from "effectively ambulat[ing]" and limited her to standing for only one or two hours per day. AR 1329. He also opined that Plaintiff's hand tremors, hand pain, and arm weakness limited her motor skills to 50 percent. AR 1329. Given these restrictions, he believed that Plaintiff was unable to perform sedentary work. AR 1329. Finally, he opined that Plaintiff was disabled as defined in the Act in three different ways: (1) she met Listing 1.02 for major joint dysfunction, (2) she met Listing 14.09C for inflammatory arthritis, and (3) she lacked sustainable function. AR 1329.

The ALJ assigned little weight to Dr. Burkett's opinion, reasoning that (1) Dr. Burkett only reviewed the record and did not treat or examine Plaintiff, (2) his opinion was inconsistent with much of the medical evidence, and (3) his opinion was inconsistent with Plaintiff's reported activities, which included actively coaching basketball. AR 155. Generally speaking, these are all legitimate reasons for discounting a medical provider's opinion. *See Holohan*, 246 F.3d at 1202 (non-examining physicians' opinions generally entitled to least weight); 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (same); *Ghanim v. Colvin*, 763 F.3d

1154, 1162 (9th Cir. 2014) (inconsistencies between physician's opinion and claimant's daily activities is legitimate reason to discount that opinion); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (same).

### 3. Plaintiff's arguments

First, Plaintiff compares Dr. Burkett's opinion with Dr. Jeffrey Merrill's opinion. ECF No. 13 at 12-14. She compares the dates of their reviews, the number of records they had available, the level of detail in their respective reports, the number of headings they used, their use of citations, etc., and asserts that these various factors made Dr. Burkett's opinion more persuasive than Dr. Merrill's. *Id.* While this may be true, it is the ALJ's province to weigh the persuasive value of the various medical opinions and the Court's role is to review for substantial evidence, not to make those determinations in the first instance. *Thomas*, 278 F.3d at 954-59.

Plaintiff also argues that the ALJ erred by not reciting all three ways in which Dr. Burkett believed she was disabled. ECF No. 13 at 14. Even assuming the ALJ was required to do this, the ALJ nevertheless described two[5] of the ways in which Dr. Burkett believed Plaintiff was disabled (Listing 1.02 and lack of sustainable function) and did not address the third (Listing 14.09C) in light of the

---

[5] Plaintiff asserts that the ALJ only outlined one of the ways in which Dr. Burkett believed her to be disabled. ECF No. 13 at 14. However, the ALJ outlined two of the three. *See* AR 155.

fact that she did not find that Plaintiff had inflammatory arthritis, as that listing requires. *Compare* AR 155, *with* AR 1329.

Plaintiff argues that the ALJ erred in discounting Dr. Burkett's opinion on the basis that he was a non-examining physician, given that the ALJ also considered other non-examining physicians' opinions yet did not discount their opinions on the same basis. ECF No. 13 at 14. In this context, this was error, *see Yesipovich v. Colvin*, 2015 WL 1738299, at *4 (N.D. Cal. 2015), which the Commissioner does not contest. *See* ECF No. 15 at 9-11.

However, the ALJ gave two other reasons for discounting Dr. Burkett's opinion. The ALJ extensively analyzed the medical record and found that it was generally inconsistent with Dr. Burkett's opinion. AR 152-53, 155. The ALJ noted Plaintiff's longitudinal examination findings that regularly revealed full strength in all extremities and muscle groups, normal muscle bulk and tone, normal sensation, no tenderness, intact motor function, and full range of motion in her extremities, hips, and back. AR 152-53. Plaintiff frequently had normal ambulation, gait, station, and movement. AR 152-53. She walked unassisted. AR 153. The ALJ also noted some occasional abnormal examination findings, including positive straight leg raise tests, "slightly decreased" upper extremity strength, spine tenderness, and a mild hand tremor. AR 152. The ALJ acknowledged that these findings demonstrated some impairment, but did not establish severe difficulties. AR 152.

Plaintiff argues that the ALJ failed to duplicate her prior discussion of the medical evidence in the section in which she discussed Dr. Burkett's opinion. ECF No. 13 at 14-15. Such repetition is not required. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). Plaintiff also cites a number of abnormal examination findings including an antalgic gait, tremors, reduced sensation, and reduced strength. ECF No. 13 at 15. The ALJ acknowledged these abnormal findings and found they resulted in some limitations, but concluded that the totality of the record generally did not support Dr. Burkett's restrictive opinion. AR 152.

The ALJ also found that Dr. Burkett's opinion was inconsistent with Plaintiff's daily activities. *See* AR 155. In September 2013—after the alleged onset date—Plaintiff reported that she was walking four miles per day for exercise. AR 826. In November 2013, she jammed her right ring finger playing basketball and later sought treatment for finger pain. AR 813. In January 2014, she was coaching basketball. AR 885. In May 2014, her orthopedic surgeon noted that she was "very active" and had "been coaching basketball for a long time." AR 1246. The ALJ reasonably inferred that these activities contradicted Dr. Burkett's opinion that Plaintiff could not "effectively ambulate," stand for more than one or two hours per day, or do things that required motor skills above 50 percent. AR 1329. These activities also reasonably contradicted his opinion that Plaintiff met Listing 1.02. AR 1329.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 23**

Plaintiff argues that "[b]ecause only basketball coaching is mentioned, this is the only alleged inconsistency that can be addressed." ECF No. 13 at 15. Again, the ALJ was not required to duplicate her prior discussion of Plaintiff's daily activities. *See Lewis*, 236 F.3d at 513. Plaintiff also argues that the evidence of her daily activities needed to specifically contradict Dr. Burkett's opinion—*i.e.*, there needed to be direct evidence showing that walking four miles or coaching basketball required her to ambulate, stand for longer than one or two hours per day, etc. ECF No. 13 at 15-16. However, ALJs are entitled to make reasonable inferences. *Bisuano v. Colvin*, 584 F. App'x 512, 514 (9th Cir. 2014).

**D. Substantial Evidence Supports the ALJ's Step Five Finding that Other Jobs Existed in Significant Numbers in the National Economy that Plaintiff Could Perform**

Plaintiff argues that substantial evidence does not support the ALJ's step five finding because the vocational expert's job number estimates were inaccurate. ECF No. 13 at 16-18. She asserts that she performed her own labor market research in Job Browser and that her search produced job number estimates that were significantly lower than the vocational expert's. *Id.* at 17.

In this case, the vocational expert testified that Plaintiff's physical residual functional capacity allowed her to perform the jobs of: (1) touch-up screener, of which there are 15,000 jobs nationwide, (2) table worker, of which there are 20,000 jobs nationwide, and (3) order clerk, of which there are 20,000 jobs

nationwide. AR 384. Relying on this testimony—which the ALJ was entitled to do, *see Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018)—the ALJ found that Plaintiff could perform the first two jobs.[6] AR 157-58.

Plaintiff contends that she performed her own labor market research in Job Browser and that her search produced job number estimates that were significantly lower than the vocational expert's—only 1,353 for touch-up screener and 2,396 for table worker nationwide. ECF No. 13 at 17. However, submitting one's own research from Job Browser—evidence that is unauthenticated, unsworn, outside of the record, not subject to questioning, and unaccompanied by any analysis or explanation from a vocational expert to put the raw data into context—is not a sufficient basis to undermine the reliability of a testifying vocational expert's opinion. *Helen P. v. Comm. of Soc. Sec.*, No. 1:18-cv-03236-RHW, ECF No. 17, at 9-11 (E.D. Wash. 2020) (Whaley, J.); *Martinez v. Colvin*, 2015 WL 4270021, at *9 (C.D. Cal. 2015); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. 2014); *Vera v. Colvin*, 2013 WL 6144771, at *22 (C.D. Cal. 2013).

**E.    The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Finally, Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 13 at 18-21.

---

[6] The ALJ eliminated the potential job of order clerk after receiving the report from psychiatrist Amy Dowell, M.D., who evaluated Plaintiff after the hearing. AR 157-58; *see* AR 1402-1410.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 25**

ALJs engage in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

ALJs may consider many factors in weighing a claimant's credibility, including ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). They may also consider the claimant's daily activities. *Id.*

### 1. Symptom exaggeration

As an initial matter, the ALJ found indicia of symptom exaggeration, which is a proper basis for discounting a claimant's testimony. AR 153; *see Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Dr. Backer noted that Plaintiff's pain was erratic and that she "appear[ed] to want to show weakness, but no objective weakness [was] identified and when asked to oppose my pushing or

pulling, she [was] able to do it with 5/5 strength in all 4 extremities." AR 898. He

then opined that her alleged diffuse pain did "not seem to follow quite an

anatomic/physiologic distribution." AR 899. Treating surgeon Dr. Atteberry also

noted that Plaintiff's symptoms were "exaggerated" and that she had "been

declining for more than a year without good neurologic reason." AR 910.

Plaintiff argues that "[t]he ALJ pointed to no diagnosis of malingering or

symptom exaggeration." ECF No. 13 at 19. While true, no formal diagnosis is

required. *Richardson v. Astrue*, 2011 WL 3273255, at *7, n.5 (W.D. Wash. 2011);

*Bryant v. Berryhill*, 2017 WL 1947426, at *5 (C.D. Cal. 2017). Plaintiff also

argues that the erratic symptoms Dr. Backer observed were consistent with

Guillain-Barré syndrome. ECF No. 13 at 20. But as discussed above, no provider

diagnosed Plaintiff with this condition and three affirmatively opined that she did

not have it. *See supra* at 9-10, 14-15.

### 2. Complaints inconsistent with medical evidence

As outlined *supra* at 22, the ALJ reasoned that Plaintiff's examination

findings throughout the treatment record were generally inconsistent with her

alleged level of limitation. AR 152-54. An ALJ may discount a claimant's

subjective symptom testimony on this basis. *Carmickle v. Comm'r of Soc. Sec.

Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d

1144, 1148 (9th Cir. 2001).

Plaintiff argues that this was error, pointing to various findings throughout the medical record including low back tenderness, urinary leakage, agitation, "loud speech," impaired attention, mild uncontrolled eye movements, decreased flexion, headaches, and fainting episodes.[7] ECF No. 13 at 18-19. Some of these, such as the headaches and fainting episodes, are citations to Plaintiff's self-reports rather than objective findings. *E.g.*, AR 1305, 1339-40. And the others, although they are objective findings, do not affect the ALJ's analysis. Plaintiff testified that she "can't do anything," AR 376, which included being unable to do housework, do dishes, cook, grocery shop, "lift anything," hold a drink, hold a pen, feed herself, or stand for more than a "little while." AR 364-68, 371, 379-80. The findings to which Plaintiff cites do not alter the ALJ's conclusion that this testimony was inconsistent with the longitudinal medical evidence.

Plaintiff briefly states that the ALJ improperly rejected her subjective pain complaints because she did not produce medical evidence corroborating them. ECF No. 13 at 18. While this would be error, *see Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), this is not what the ALJ did. Rather, the ALJ discredited Plaintiff's

---

[7] Plaintiff also notes that she had several falls and implies that these were due to her physical impairments. ECF No. 13 at 18. But her orthopedic surgeon noted that these were due to accidental trips. *See* AR 1287 ("[O]ne, where she slipped and banged her shoulder against a door, and the other was she accidently tripped over her 90-year-old grandmother a couple weeks later.").

testimony because the medical records affirmatively contradicted it, which is permissible.

### 3.    Complaints inconsistent with daily activities

Finally, the ALJ discounted Plaintiff's subjective complaints because they were belied by her daily activities, which included walking four miles per day, playing basketball, and coaching basketball. AR 154-55. Activities inconsistent with the alleged symptoms are proper grounds for questioning the credibility of subjective complaints. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(3)(i).

Plaintiff argues that her walking was not inconsistent with her testimony because she was only "walking 4 miles per day in June 2013 (prior to her onset)." ECF No. 13 at 21 (citing AR 829). However, she was still doing so in September 2013, after her alleged onset of disability. *See* AR 826.[8] Plaintiff also argues that "[w]hen she attempted basketball, she had to present to the ER with chest pains and shortness of breath." ECF No. 13 at 21 (citing AR 770-71). This is incorrect—Plaintiff jammed her finger playing basketball in November 2013 and three weeks later she sought treatment for finger pain, not for chest pain or shortness of breath. *See* AR 813. The records to which Plaintiff cites relate to an emergency room visit

---

[8] Plaintiff argues that the ALJ cited to the "social history" portion of the ARNP's chart note for this fact, but the ARNP regularly updated this portion of her notes to reflect when Plaintiff was not exercising. *See* AR 814.

for an onset of chest pain that occurred while she was sleeping and have nothing to do with her basketball activities. *See* AR 770-71. Plaintiff fails to demonstrate any error in the way the ALJ considered her daily activities in discounting her subjective complaints.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because she provided multiple clear and convincing reasons for doing so.

## VIII. Order

Having reviewed the briefs, the record, and the ALJ's findings, the Court concludes the Commissioner's decision is supported by substantial evidence and is free from legal error.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

///

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 30**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this March 16, 2020.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge